LAW OFFICE OF ANDRÉA MARCUS
*A Professional Corporation*
Andréa Marcus, (SBN 188098)
133 E. De La Guerra Street, #143
Santa Barbara, CA 93101-2247
Phone: (888) 215-9021
Fax: (888) 215-9021
andrea@andreamarcuslaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.B. (a minor, by and through his parents, DANIELLE SWIONTEK and GLENN BELTZ)<br><br>Plaintiffs,<br><br>vs.<br><br>GOLETA UNION SCHOOL DISTRICT<br><br>Defendant. | Case No. 22-5107<br><br>COMPLAINT<br><br>1) Damages and Injunctive Relief for Violations of the Americans with Disabilities Act;<br>2) Damages for Violations of Section 504 of the Rehabilitation Act of 1973;<br>3) Damages for deprivation of rights in violation of 42 U.S.C. § 1983 ("§ 1983);<br>4) Title VI, 42 U.S.C. § 2000d et seq., as part of the landmark Civil Rights Act of 1964.<br>5) For Prevailing Party Attorneys' fees and costs;<br>6) Demand for Jury Trial. |

1
COMPLAINT

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), because:

   a. This action seeks redress under 42 U.S.C. §1983 ("Section 1983") for the deprivation of rights secured by federal statutes.

   b. This action seeks redress under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504").

   c. This action seeks redress under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

2. This Court has jurisdiction under Title VI, 42 U.S.C. § 2000d et seq., as part of the landmark Civil Rights Act of 1964. It prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.

3. This Court has jurisdiction to hear state claims under the doctrine of supplemental jurisdiction set forth at 28 U.S.C. § 1367.

4. Venue in this Court is proper under 20 U.S.C. § 1391(b) because Defendant(s) and Plaintiff reside within Santa Barbara County, and in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

5. Plaintiff F.B. (by and through his parents, Dr. Danielle Swiontek and Dr. Glenn Beltz) are a son, mother, and father respectively. F.B. started attending Goleta Union School District in August of 2016 (Kindergarten). F.B. is a student of Brandon School within the Goleta Union School District ("District" or "Defendant", who at all relevant times is identified as an individual with disabilities within the meaning of that term under 20 U.S.C. §1401 (3) and is an individual with exceptional needs within the meaning of that term under California

Education Code §56026 and therefore was entitled to, and received, special education and related services while she was resident in the District. Student is a person who has a physical or mental impairment that substantially limits one or more major life activities within the meaning of 34 C.F.R §104.3(j). Therefore, Student is entitled to be free of discrimination based on a disability under Section 504 and Title II.

6. Defendant Goleta Union School District is a public school district duly organized and existing under the laws of the State of California and is located within Santa Barbara County. At all times relevant herein, the District was the local educational agency responsible for providing school children full and equal access to the public education programs and activities it offers in compliance with the requirements of state and federal law, and for providing Student with a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Improvement Act ("IDEIA"). District receives federal financial assistance.

7. Defendant GUSD is a public entity subject to the Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, the requirements of California state law requiring full and equal access to public facilities pursuant to Government Code §§ 11135 and 4450, et seq., and to all other legal requirements referred to in this Complaint.

8. In enacting Title II of the Americans with Disabilities Act Congress validly abrogated state sovereign immunity, and thus the defendants named herein may be sued pursuant to Title II. *Hanson v. Med. Bd. Of California*, 279 F.3d 1167, 1170 (9th Cir. 2002). By accepting Federal Rehabilitation Act funds, the defendants named herein waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to § 504 of the Rehabilitation Act of 1973. *Pugliese v. Dillenberg*, 246 F.3d 937 (9th Cir. 2003).

//

## BASIS OF THE DISPUTE

9. F.B. is eleven years old, Black, and has autism (a developmental disabilitiy) and ADHD. Instead of addressing F.B.'s disability as required to by state and federal legal mandates, Defendant has at ***all times refused to acknowledge that his autism was a disability***. Instead, Defendant has suspended, segregated, humiliated, and harmed F.B., ultimately criminalizing the symptoms of his disability because he is Black, and retaliating against his parents for their advocacy for him.

10. Defendant who has some responsibility to serve, supervise, educate and protect F.B., has continued to refuse to take action to provide appropriate accommodations for F.B., and instead, has excluded him from access and enjoyment its public entities. F.B.'s constitutional rights were discarded and abandoned while defendant refused to accommodate F.B.'s disabilities and banned him from participating in the public activities offered to F.B.'s non-disabled and non-Black peers.

## FACTS AND PROCEDURAL HISTORY

11. F.B. began attending Goleta Union School District in August of 2016 (Kindergarten).

12. F.B. is an eleven-year-old boy who is Black, and a "qualified person with disability" within the meaning of the § 504 of the Rehabilitation Act of 1973 & the Americans with Disabilities Act, 29 U.S. Code § 794. F.B. is a student residing within the jurisdiction of the Respondent's school district and has a diagnosis of Autism. Goleta Union School District has refused to serve his autism.

13. Goleta Union School District has offered F.B. an Individualized Education Plan ("IEP") based upon its determination that F.B. Qualifies as a child with a disability under the Individuals with Disabilities Education Act ("IDEA"), due to attention deficit and learning disabilities, which also qualify him for reasonable accommodations under § 504 of the Rehabilitation Act.

14. Goleta Union School District asserted in January of 2022, that F.B. must leave his neighborhood school to attend another school site and classroom designed for students with emotional disturbance, a disability category F.B. does not qualify for. F.B.'s parents refused to agree to send him to the other school and classroom. Instead, they advocated for him to be allowed to attend his neighborhood school and receive non-punitive and positive peer reviewed and research-based behavior interventions to properly address his autism.  An underlying administrative due process hearing in pending pursuant to F.B.'s IDEA claims.

15. Upon his parents filing their IDEA claim seeking appropriate services for his autism, F.B. was increasingly reprimanded for his autistic behavior.  After months of implementing punitive behavior interventions in contrast with F.B.'s IEP and California Department of Education regulations, F.B. allegedly threatened school staff with a pole used for adjusting windows, and within a day of that, with scissors, and shoved a staff person.  In response to these incidents in early May of 2022, the District suspended him and reported him to the police.

16. The police were not called by Goleta Union School District to come to the school to assist with a behavior crisis; they not called due to safety concerns (F.B. was invited to return to school with no safety measures adopted or threat assessments conducted, after missing only two days of school).

17. Upon information and belief, Goleta Union School District reported F.B. to the police because he is Black and because reporting him to the police would cause particular concern to his parents – given his Blackness - and succeed in retaliating against his parents for their legal advocacy for F.B., i.e., get them to stop seeking positive behavior supports appropriate to address his autism and related behaviors.

18. Upon information and belief, Goleta Union School District reported F.B.'s disability-based behaviors which non-Black children are not reported to the police

for. Goleta Union School District has failed to provide F.B. with reasonable accommodations for his autism.

# FIRST CLAIM FOR RELIEF

### (FOR VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, WHICH PROHIBITS DISCRIMINATION ON THE BASIS OF RACE AND/OR COLOR IN ALL PROGRAMS OR ACTIVITIES THAT RECEIVE FEDERAL FINANCIAL ASSISTANCE (34 C.F.R. PART 100); DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 ("§ 1983)

19. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1 through 17.

20. Goleta Union School District has discriminated against F.B. because he is Black and because he has a disability, in violation of his rights.

21. In lieu of providing appropriate accommodations or specialized services to F.B., Goleta Union School District has treated his behaviors as neuro-typical and volitional and reported him to the police, because he is Black. Goleta Union School District refuses to serve F.B.'s autism because it blames his autistic behaviors in part on his Blackness, and therefore, uses punitive behavior measures instead.

22. Goleta Union School District 's draconian and ignorant notions of F.B.'s behavior being caused F.B. Blackness and that they are properly met with shaming, punishing and criminalization, has created a hostile and unsafe environment for him at school.  Goleta Union School District has insisted F.B. be removed from his neighborhood school because he is Black and disabled.  F.B.'s parents have advocated for him to be allowed to remain in his neighborhood school and be provided appropriate support to address his autism.  Goleta Union School District has met their advocacy with retaliation and scare-tactics which have been harmful

to F.B. and his parents and are intended to stop them from advocating for his rights as a child with disabilities and remove him from school.

23. Goleta Union School District reported F.B.'s behaviors to police because he is Black.

24. Goleta Union School District has a pattern or practice of conduct of administering its schools and programs with Anti-Black Bias and discrimination, which impedes parent participation and has disparately impacted F.B. when disciplined for behavior based upon Goleta Union School District's Anti-Black Bias. Goleta Union School District's Anti-Black Bias promotes a school-to-prison pipeline. See, *United States v. City of Meridian*:

> "The "school to prison pipeline" term was coined on the notion that [arresting, adjudicating, and incarcerating children for school infractions without exercising appropriate discretion and without regard for the Defendants' obligations under the United States Constitution] tended to push students *out* of the classroom and *into* the juvenile justice system, the streets, and eventually into the adult criminal justice system. Deborah N. Archer, *Introduction: Challenging the School-to-Prison Pipeline*, 54 N.Y. L. SCH. L. REV. 867, 868 (2009). Challengers to this development contend that these practices are part of a nation-wide trend toward law enforcement punishing behavior that was once disciplined within the school - conduct which is much more likely to result in a child having a criminal record than a high school diploma. See Jennifer M. Grieco, *Pipelines and Their Diverging Paths to the Justice System,* 98 Mich. B.J. 12 (January, 2019).
> The school to prison pipeline is referred to by one writer as a "controversial concept and a disappointing reality." Areto A.

Imoukhuede, *The Right to Public Education and the School to Prison Pipeline*, 12 Alb. Gov't L. Rev. 52, 52-53 (2019)

Studies have shown that some groups of students are disproportionately impacted by this trend. Students of color and students with disabilities tend to be disciplined more harshly and are more frequently referred to law enforcement for minimal misbehavior. Saady*, Throwing Children Away: The School-to-Prison Pipeline, The American Conservative* (August 13, 2018)

< *https://www.theamericanconservative.com/articles/throwing-children-away-the-school-to-prison*-pipeline/>. Eventually these students drop out of school or are pushed out of school." Emphasis added.

*United States v. City of Meridian*, CIVIL Act. 3:13-cv-978 HTW-LGI, at *2-3 (S.D. Miss. Feb. 23, 2022)

25. Goleta Union School District has treated F.B.'s behaviors as neurotypical aggression because he is Black, resulting in isolation from peers, harsh punishment, and removal from certain school spaces.

26. Goleta Union School District reported F.B. to police with the knowledge that it would frighten his parents and dissuade them from their continued efforts in advocating for appropriate support for his autism at school, and their refusal to agree to subject F.B. to disability and race-based segregation from his neighborhood school. Because F.B. is Black, and in retaliation for his parents' advocacy, has refused to agree to cease reporting F.B. to the police for his autistic behavior. Dr. Saleh and Ms. Larios-Horton determined F.B. would be reported to police, and refused to cease continuing to do so, knowing that reporting F.B., a Black boy, to the police was particularly dangerous for F.B. – with far-reaching implications. Dr. Saleh and Ms. Larios-Horton did this to make his parents fear for his safety at school, and with the intention that it would lead F.B.'s parents

8
COMPLAINT

removing him from school and/or cease advocating for support for his autism. [On information and belief, Goleta Union School District has a pattern and practice of denying children with autism peer reviewed and research-based support for their autism as required by law, because it is expensive.]

27. On information and belief, there are multiple children who exhibit behavior akin to behaviors Goleta Union School District reported F.B. for, who have never been reported to police – none of them are Black. Goleta Union School District's reporting of reporting Black children to police disparately impacts F.B. because he is Black.

28. F.B. has been denied access to Goleta Union School District's programs, services and facilities, because he is Black. He has been asked to wait to enter school until after all the other children enter school, and then he has been reported for truancy due to the "Tardy" notices he accrues for doing so. Because he is Black, F.B. has been made to write apologies for behaviors that non-Black children exhibit, disparately impacting him and stigmatizing his behavior because he is Black.

29. Because F.B. is Black, when disputes arose between F.B. and other children, F.B. was blamed for the incident. Because F.B. is black, behaviors F.B. exhibited were described by his principal as "scarry" but not described that way when other children exhibited them.

//
//
//
//
//
//
//

# SECOND CLAIM FOR RELIEF

### (FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973, WHICH PROHIBITS DISCRIMINATION ON THE BASIS OF DISABILITY IN ALL PROGRAMS OR ACTIVITIES THAT RECEIVE FEDERAL FINANCIAL ASSISTANCE (34 C.F.R. PART 104); TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990, WHICH PROHIBITS DISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ENTITIES (28 C.F.R. PART 35)); DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1983

30. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1 through 28.

31. Goleta Union School District has acted in bad faith, with gross misjudgment and deliberate indifference and has thereby intentionally discriminated and retaliated against F.B. and his parents based on his disability by denying her the benefits of school and subjecting him to discrimination and retaliation at school by failing to provide reasonable accommodations for his developmental and behavioral disability in violation of Title II and by abusing its discretion by reporting him to police, instead.

32. Goleta Union School District has retaliated against F.B. and his parents because they refused to move him from his neighborhood school and stop advocating for appropriate behavior support for his autism.

33. Instead of conducting the behavior analysis his parents requested in December of 2021, on January 07, 2022, Dr. Cherilyn Lew, Goleta Union School District's then-assistant superintendent of Pupil Services, insisted that F.B. be moved from his neighborhood school and sent to a classroom for "emotionally disturbed"

children. F.B. has never been qualified or diagnosed with anything qualifying him under the IDEA category of "emotional disturbance."

34. F.B.'s parents refused to allow the Goleta Union School District to remove him from his neighborhood school because of his disabilities or the color of his skin. F.B.'s parents advocated that instead, F.B. should receive appropriate specialized instruction and reasonable accommodations for his behavioral disabilities, so that he could remain in the school his neighborhood friends attend. F.B. has friends (something particularly difficult to maintain for many children on the autism spectrum) at school who he plays with after school, and who his mother coached on his soccer team. Most of these boys are neuro-typical, and also model neuro-typical social skills for F.B..

35. Upon information and belief, after F.B.'s parents refused to remove him from his neighborhood school and hired an attorney and private behavior specialist to help identify the source of F.B.'s behavior difficulties at school, Margaret Saleh and Maria Larios-Horton instructed F.B.'s teachers and/or staff working with him to increase their demands that F.B. write apologies and "reflections," and placed additional demands anticipated to elicit an increase in maladaptive behaviors from F.B. Upon information and belief, this was done with the intent of causing F.B.'s maladaptive behaviors to increase, as retaliation against F.B. and his parents for their advocacy that he not be moved from his neighborhood school to a classroom for "emotionally disturbed" children, and so that moving him to the "emotionally disturbed" or other more restrictive environment, could be justified through the predictable intensity of behavior outbursts by F.B..

36. Upon information and belief, Margaret Saleh and Maria Larios-Horton discussed and agreed to report F.B. to the police, *after* a behavior incident was over, and F.B. was no longer at school. Margaret Saleh asserted Goleta Union School District was required under the California Education Code to report F.B. to police.

However, Goleta Union School District does not report white children with similar or more extreme behaviors at school to police.

37. Goleta Union School District's police report (and subsequent refusal by Ms. Margaret Saleh, to agree to cease such reports in the future) served to retaliate against his parents for their advocacy for his right to attend his neighborhood school as a child with disabilities, and a child who is Black. Goleta Union School District reported F.B. to police, with the knowledge that because he is Black, his parents would fear more than parents of non-Black children for his safety at school. Goleta Union School District knew, intended and/or disregarded that F.B.'s parents would be particularly concerned with Goleta Union School District's threat of repeated reports, should he continue to attend school and exhibit behaviors due to his autism not being properly accommodated.

38. Goleta Union School District has engaged in this retaliation to discourage F.B.'s parents from advocating any further for F.B.'s placement at his neighborhood school, and to encourage them to remove him from school. The harm suffered by Goleta Union School District's police report, continued threat of such reports in the future and related retaliation, have harmed F.B. and his parents.

### THIRD CLAIM FOR RELIEF
### (RECOVERY OF PREVAILING PARTY ATTORNEYS' FEES UNDER THE ADA, SECTION 504, AND § 1983)

39. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1 through 37.

40. Plaintiff is entitled to reasonable attorneys' fees incurred during the course of this litigation.

## DAMAGES SUSTAINED AS A RESULT OF THE ABOVE REFERENCED CLAIMS

41. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1 through 39.

42. As a direct and proximate result of the acts and omissions alleged above, Plaintiff has suffered substantial educational and developmental losses, causing a permanent decline in his future development, which adversely impacts his future earnings and earnings potential, and which has resulted in humiliation, pain and suffering, and damage to her social development and interpersonal relations, in an amount subject to proof at trial.

## **PRAYER FOR RELIEF**

43. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1 through 41.

44. For a declaration that Goleta Union School District has acted with bad faith, with gross misjudgment and deliberate indifference and thereby intentionally discriminated and retaliated against Student based on his disability in violation of Section 504 and Title II;

45. For a declaration that Goleta Union School District has acted with bad faith, with gross misjudgment and deliberate indifference and thereby intentionally discriminated and retaliated against Student based on his race and color in violation of the Civil Rights Act of 1964;

46. For an award of compensatory damages according to proof;

47. For an award of attorneys' fees and costs as prevailing party;

48. For costs of suit and reasonable attorney's fees incurred regarding all claims for relief;

49. Interest on said sums at the legal rate; and

50. Such other and further relief as to the Court seems just and proper.

LAW OFFICE OF ANDRÉA MARCUS         DATED: July 22, 2022

*A Professional Corporation*

_____/S/_____

By: Andréa Marcus

Attorney for Plaintiff